# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**SARA HILDEBRAND**
        Plaintiff,

v.

Case No: 19-CV-924

**VILLAGE OF GERMANTOWN**
        Defendant.

## COMPLAINT

Plaintiff Sarah Hildebrand, by and through her attorneys, Larry A. Johnson, Summer H. Murshid, and Timothy P. Maynard of Hawks Quindel, S.C., hereby states her Complaint against Defendant, Village of Germantown.

## NATURE OF THE CASE

This is an action under the American with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101, *et seq.*, and the Wisconsin Fair Employment Act (WFEA), Wis. Stat. § 111, *et seq.*, seeking back pay, compensatory and punitive damages, and attorney's fees and costs from Defendant for its violations of Plaintiff's rights to equal employment.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question brought under the American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et. seq.*

2. This Court has supplemental jurisdiction over the Wisconsin state law claims pursuant to 28 U.S.C. § 1367. The federal and state disability and retaliation claims are so related that they form part of the same case or controversy under Article III of the United States Constitution. The Wisconsin wage law retaliation claim (ERD Case No. CR201802372) is so related to Federal Eastern District of Wisconsin Case No. 18 cv 1309, which is associated with this case, that they form part of the same case or controversy.

3. Venue in the district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant, Village of Germantown, is located in this district.

## **PARTIES**

4. Sara Hildebrand ("Ms. Hildebrand") is an adult resident of Milwaukee County in the State of Wisconsin. Ms. Hildebrand is a former employee of Defendant, Village of Germantown, and previously worked for the Germantown Community Library.

5. Defendant is a Wisconsin municipality with its principal office located at N112W17001 Mequon Road, Germantown, Wisconsin, 53022. Its registered agent for service of process is the Village Clerk at the Village of Germantown, N112W17001 Mequon Road, Germantown, Wisconsin, 53022.

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Ms. Hildebrand filed three charges with the Equal Employment Opportunity Commission (EEOC) alleging violations of Title VII by Defendant, Village of Germantown. Those charges were cross-filed with the Wisconsin Equal Rights Division alleging violations of the Wisconsin Fair Employment Act.

7. On February 19, 2019, Ms. Hildebrand received three Cause decisions (Charge numbers: 443-2017-00844, 443-2018-01034, and 443-2018-02345) and on April 24, 2019 Ms. Hildebrand received a Notice of Rights from the EEOC on all three decisions (EEOC No. 443-2017-00844; 443-2018-01034; and 443-2018-02345).

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

9. Ms. Hildebrand worked for Defendant as a Librarian 1 from approximately August 1, 1993 until August 24, 2018.

10. Ms. Hildebrand suffers from cerebral palsy and femora acetabular impingement (FAI). Both disabilities affect her ability to perform major life activities, including her ability to lift objects, move heavy book carts, climb on and off tall office chairs, walk long distances, stand, sit, and bend. Ms. Hildebrand also suffered a workplace injury that required accommodation.

11. In 2014, Ms. Hildebrand was placed on medical work restrictions for her FAI (see par. 10).

12. In March of 2016, a doctor classified Ms. Hildebrand's FAI and medical work restrictions as permanent.

13. Based on her permanent medical work restrictions, Ms. Hildebrand requested accommodations to enable her to better perform her job duties.

14. In October 2016, Defendant denied Ms. Hildebrand the opportunity to interview for the position of Library Director.

15. Defendant eventually hired Trisha Smith ("Smith") to the position of Library Director. Smith, who was 28 years old at the time of the promotion, had substantially less experience than Ms. Hildebrand and fewer qualifications for the position of Library Director. In addition, unlike Ms. Hildebrand, Smith did not suffer from any known disabilities.

16. On or about January 26, 2017, Ms. Hildebrand complained to Smith, alleging among other things harassment by Barbara Kudronowicz ("Kudronowicz") based on Ms. Hildebrand's disabilities. Kudronowicz's harassment included, but was not limited to, scolding Ms. Hildebrand for moving slowly while using a walker; pointedly refusing to assist Ms. Hildebrand with job duties that she knew Ms. Hildebrand's accommodations prevented her from doing; and making comments to the effect that Ms. Hildebrand was faking her work restrictions. Kudronowicz had also complained regularly to supervisors about Ms. Hildebrand's disability-related limitations.

17. On or about January 31, 2017, Ms. Hildebrand met with Smith and Village Administrator Dave Schornack ("Schornack") to discuss Kudronowicz's conduct, as well as Ms. Hildebrand's requests for reasonable accommodations for

her disabilities. Schornack and Smith initially denied that Ms. Hildebrand required any accommodations, despite Ms. Hildebrand having previously submitted an accommodation note on or about March 4, 2016.

18. On or about February 11, 2017, Smith sent a memo to Ms. Hildebrand ignoring many of Ms. Hildebrand's further requested accommodations but issuing several of her own work restrictions and expectations.

19. On or about February 16, 2017, in response to Ms. Hildebrand's January 26, 2017 complaints alleging harassment because of her disabilities (see par. 16), Smith placed a separate memo in Ms. Hildebrand's permanent personnel file accusing Ms. Hildebrand of causing "dysfunction and resentment within the library" and "creating hostility."

20. Smith also needlessly exacerbated the hostility of Ms. Hildebrand's work environment throughout their time together. This included but was not limited to refusing to acknowledge Ms. Hildebrand's successful proposition to rename the library system and refusing to acknowledge Ms. Hildebrand's naming of a library program for sufferers of Alzheimer's.

21. On February 1, 2018, Ms. Hildebrand sent a letter to Smith seeking a meeting by February 15, 2018 to discuss Ms. Hildebrand's requested accommodations.

22. On or about February 9, 2018, Ms. Hildebrand submitted a second restriction/accommodation note from Milwaukee Orthopaedic Group re-establishing her original need for accommodations, and also establishing additional needs for accommodations, such as being allowed to sit at a lowered library reference desk.

23. On February 23, 2018, a lowered reference desk was placed behind the main reference desk at the library, but Ms. Hildebrand was told nothing regarding its use, and no properly sized chair was provided at this lowered desk.

24. On or about March 5, 2018, with Smith having not responded to Ms. Hildebrand's February 1 letter (see par. 21), counsel sent Defendant a letter concerning Ms. Hildebrand's accommodations. Ms. Hildebrand also submitted a letter to Smith on about March 10, 2018 concerning her accommodations. Smith responded by scheduling a meeting but noting that the meeting would be also be used to discuss Ms. Hildebrand's work performance and procedures.

25. At the ensuing meeting, on March 14, 2018, Smith ordered Ms. Hildebrand to correct alleged performance issues and said that if the alleged issues were not resolved Plaintiff Hildebrand would be subject to disciplinary action. This was Ms. Hildebrand's first time facing such discipline during her 25 years with Defendant.

26. At the March 14, 2018 meeting, Smith also gave Ms. Hildebrand additional work in the form of increased adult programming, with the threat of disciplinary action should the additional work not be completed as instructed.

27. On May 23, 2018, Ms. Hildebrand sent Smith a two statements seeking clarification regarding both the additional duties and the performance expectations Smith had imposed.

28. On August 13, 2018, nearly 13 months later, Smith responded with an email refusing to provide any clarification.

29. On June 29, 2018, Ms. Hildebrand submitted a third restriction/accommodation note from Milwaukee Orhopaedic Group, re-establishing her existing need for accommodations and establishing a further need for accommodation.

30. On or about August 9, 2018, counsel for Hildebrand emailed counsel for Defendant to assert that Defendant was in violation of Wisconsin wage and hour law. Specifically, Hildebrand asserted that Defendant was using an impermissible "rounding" policy. Counsel for Ms. Hildebrand further informed counsel for Defendant that Ms. Hildebrand would be filing a Wisconsin wage and hour claim if the policy was not corrected.

31. Throughout the Summer of 2018, Ms. Hildebrand was written up numerous times. However, any alleged deficiencies were either pretextual or directly related to Defendant's refusal to accommodate Ms. Hildebrand's disabilities.

32. On August 24, 2018, Ms. Hildebrand was terminated for alleged policy violations.

## STATEMENT OF CLAIMS

33. Ms. Hildebrand reasserts and incorporates by reference all previous paragraphs set forth herein.

34. The American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et. seq.,* prohibits discrimination on the basis of disability. The Wisconsin Fair Employment Act, Wis. Stat. § 111, *et. seq.,* provides that employers may not

discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment "because of such individuals . . . disability."

35. The Wisconsin Fair Employment Act further provides that employers may not discriminate against any individual who "attempts to enforce" any right under Wisconsin's Wage Payment Law, Wis. Stat. § 109.03.

36. Title I of the Americans with Disabilities Act of 1990, 29 C.F.R. pt. 1630 app. § 1630.2(o), requires an employer to provide reasonable accommodation to qualified individuals with disabilities who are employees or applications for employment, unless to do so would cause undue hardship.

37. At all relevant times herein, Ms. Hildebrand was an employee of the Village of Germantown.

38. Discrimination based on disability is discrimination under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq*. Furthermore, retaliation based on complaints of discrimination is illegal under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq*. Finally, harassment based on a disability is also illegal under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq*.

39. Defendant's actions as set forth above violated Ms. Hildebrand's rights under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq.*, 29 C.F.R. pt. 1630 app. § 1630.2(o), 29 C.F.R pt. 1630 app. § 1630.12(a), and the Wisconsin Fair Employment Act, Wis. Stat. § 111, *et. seq.,* and thereby injured Plaintiff Hildebrand.

40. The unlawful practices complained of in paragraphs 9-32 above deprived Ms. Hildebrand of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability, and because of her attempt to enforce her rights under Wisconsin's Wage Payment Law.

41. The unlawful employment practices complained of in paragraphs 9-32 above were intentional.

42. The unlawful employment practices complained of in paragraphs 9-32 above were done with malice or with reckless indifference to the federally protected rights of Ms. Hildebrand.

## REQUEST FOR RELIEF

WHEREFORE, Ms. Hildebrand seeks the following relief as provided by law:

(1) An Order finding that the Village of Germantown violated the ADA;

(2) An Order finding that the Village of Germantown violated the WFEA;

(3) An Order directing Defendant to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

(4) An Order directing Defendant to make Plaintiff whole by providing compensatory and punitive damages to compensate for past and future nonpecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, and mental anguish resulting from the unlawful

practices complained of in the foregoing paragraphs in amounts to be determined at trial;

(5) Reinstatement to an employment position comparable to Plaintiff's former position with Defendant, or, in the alternative, front pay;

(6) Costs and reasonable attorney's fees in amounts to be determined by the Court in accordance with 42 U.S.C. § 12101, *et. seq.,* and Wis. Stat. § 111, *et seq.*, and;

(7) Such other further legal and equitable relief as the Court may deem appropriate.

Dated this 24th day of June, 2019.

Respectfully submitted,

*s/ Summer H. Murshid*
Larry A. Johnson
SBN 1056619
Summer H. Murshid
SBN 1075404
Timothy P. Maynard
SBN 1080953

**Hawks Quindel, S.C.**
222 East Erie Street
Suite 210
P.O. Box 442
Milwaukee, WI 53201-0442
Telephone: (414) 271-8650
Fax: (414) 271-8442
Email(s):   ljohnson@hq-law.com
                smurshid@hq-law.com
                tmaynard@hq-law.com